UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

John Chinnici,
*Plaintiff*

*v.*                                                                                                   No. 2:23-cv-52-kjd

Town of Bennington, et al.,
*Defendants*

**Plaintiff's Opposition to Defendants' Joint Motion to Dismiss**

**Introduction and Statement of Facts**

Plaintiff John Chinnici commenced this action in the Vermont Superior Court on January 17, 2023, to vindicate his federal and state rights to be free from unreasonable searches and seizures and false arrest. Defendants Town of Bennington, Paul Doucette, Lawrence Cole, and Anthony Silvestro subsequently removed the case to this Court and filed a joint motion to dismiss the complaint. For the reasons that follow, the Court should deny the motion to dismiss [ECF Nos. 2, 2-1].

As alleged in the Complaint [ECF No. 5], on January 11, 2016, two individuals committed the armed robbery of two convenience store employees. Compl. ¶¶ 18-19. The Bennington Police Department (BPD) almost immediately singled out Plaintiff in its investigation, to the exclusion of other, more probable suspects. *Id.* ¶ 21. It did so notwithstanding the fact that Plaintiff did not match the description provided by the employees. *Id.* ¶¶ 26-56. Having set their sights on Plaintiff, beginning in the early morning of January 14, Defendants repeatedly tried, and repeatedly failed, to pressure

one of the robbers and another individual into naming Plaintiff as the accomplice—and did so in violation of the witnesses' constitutional rights. *Id.* ¶¶ 60-84, 91-104. BPD officers also interviewed Plaintiff, who denied that he had any involvement in the robbery, while also pointing out the discrepancies between the employees' description and himself. *Id.* ¶¶ 85-90.

Notwithstanding the facts that (1) the suspects did not name Plaintiff as the other robber, even in the face of BPD's pressure campaign, (2) BPD knew that Plaintiff did not match the description of the robber provided by the employees, and (3) Plaintiff denied any involvement in the crime, BPD nevertheless arrested Plaintiff on January 14, 2006, for the robbery without probable cause. *Id.* ¶¶ 105-09, 184-85. The arrest occurred at the Bennington state office complex, where Plaintiff was accompanying a family member to a family court hearing. *Id.* ¶ 105. Plaintiff was surrounded by a dozen or more BPD officers, placed against a wall, searched, handcuffed, and advised that he was under arrest for assault and armed robbery. *Id.* ¶ 106. From this moment, Plaintiff was confined to law enforcement custody until he regained his liberty on January 17, 2020.

Directly after arresting Plaintiff at the courthouse, BPD transported him to the BPD station, where he was processed, placed in a holding cell, and relieved of his personal property. *Id.* ¶ 107. After Plaintiff's arrest, BPD again resumed pressuring, cajoling, and bargaining with the robber to name Plaintiff—or at least *some* member of Plaintiff's family—as his accomplice. *Id.* ¶¶ 110-14. BPD again failed. *Id.* ¶¶ 114-15. After a brief break, the interrogation resumed, and the robber finally succumbed to the pressure campaign and claimed that Plaintiff was his accomplice. *Id.* ¶¶ 116-17. A few hours later, still on January 14, BPD interrogated Plaintiff, confronting him with both the robber's claim as well as false information about other evidence BPD had allegedly

2

collected. *Id.* ¶ 119-29. Plaintiff continued to deny any involvement, again pointed out the discrepancies between the employees' descriptions and himself, and offered to wear a wire to prove that the robber had falsely implicated him. *Id.* ¶¶ 124-26, 128, 130. After the interview ended, BPD returned him to the holding cell. *Id.* ¶ 131.

On January 15 and February 23, 2016, BPD officers filed two affidavits in support of applications for warrants to search Plaintiff's cell phone. *Id.* ¶¶ 134, 161. These affidavits were rife with material omissions and misrepresentations. *Id.* ¶¶ 135-158, 162. Information from these unreasonable searches, as well as from Plaintiff's interrogation following his arrest without probable cause, was introduced and relied on at trial. *Id.* ¶¶ 132, 159, 164.

Plaintiff was arraigned in state criminal court on January 15, 2016, on charges of assault and robbery with a weapon, 13 V.S.A. § 608(b), and providing false information to an officer to implicate another, 13 V.S.A. § 1754(a), Compl. ¶ 165, and was ordered held on bail, *id.* ¶ 167. On July 10, 2017, federal prosecutors charged Plaintiff with obstructing commerce by robbery, 18 U.S.C. § 1951, and the State dismissed both state charges shortly thereafter. Compl. ¶¶ 167-68. Plaintiff was convicted following a jury trial, but his conviction was vacated after the district court granted his motion for a new trial. *Id.* ¶¶ 170-76. On January 17, 2020, the federal government charged Plaintiff with, and Plaintiff pleaded guilty to, using a cell phone in the commission of the offense of distribution of Oxycodone. *Id.* ¶¶ 177-78. That same day, the district court sentenced Plaintiff to time served plus one year of supervised release, and he was released from custody that same day—after spending more than four years in prison. *Id.* ¶¶ 178, 180. Plaintiff filed his complaint on January 17, 2023—within three years of his release from custody. *See* Vermont Superior Court timestamp at ECF No. 5 at 1.

**Argument**

I. **12 V.S.A. § 551 Tolls the Statute of Limitations as to Each of Plaintiff's Claims from His Arrest Until His Release from Custody, and His Complaint Was Timely Filed.**

Plaintiff does not dispute that, absent some kind of tolling, his complaint would be outside the statute of limitations and thus untimely. Plaintiff also does not dispute—for purposes of resolving the pending motion only—Defendants' assertions of when his various claims accrued. Nor, finally, does Plaintiff dispute that he has not pleaded facts that would support the application of equitable tolling. The only issue, therefore, that this Court need consider in resolving the pending motion is the applicability to Plaintiff's claims of 12 V.S.A. § 551(a)'s provision tolling the statute of limitations for claims that accrue while the plaintiff "is imprisoned" until such time as that disability is removed. For the reasons that follow, § 551(a) applies to each of Plaintiff's claims and the Court should therefore deny the motion to dismiss.

    A. **The plain language of § 551(a) encompasses pre-arraignment and pre-conviction deprivations of liberty and periods of confinement.**

Because federal law provides no statute of limitations for 42 U.S.C. § 1983 claims, courts look to the relevant state's limitations period for personal injury torts—which, in Vermont, is three years. *E.g.*, *Tester v. Pallito*, No. 2:19-cv-146-cr-jmc, 2020 WL 2813607, at *3 (D. Vt. Mar. 9, 2020), report and recommendation adopted, 2020 WL 2793164 (May 29, 2020); *see also* 12 V.S.A. § 512(4) ("Actions for the following causes shall be commenced within three years after the cause of action accrues, and not after: . . . (4) except as otherwise provided in this chapter, injuries to the person suffered by the act or default of another person, provided that the cause of action shall be deemed to accrue as of the date of the discovery of the injury . . . ."). When importing state law

4

governing limitations periods in § 1983 actions, federal courts also import the state's rules on tolling, so long as they do not conflict with federal law. *See* 42 U.S.C. § 1988(a). And, the Supreme Court has held that state laws tolling the statute of limitations for claims that accrue during imprisonment do not so conflict. *Hardin v. Straub*, 490 U.S. 536, 543 (1989).

The relevant tolling rule here is 12 V.S.A. § 551(a), which provides:

> When a person entitled to bring an action specified in this chapter is a minor, lacks capacity to protect his or her interests due to a mental condition or psychiatric disability, or is imprisoned at the time the cause of action accrues, such person may bring such action within the times in this chapter respectively limited, after the disability is removed.

The question for the Court, then, is whether Plaintiff was "imprisoned," within the meaning of the statute, when his claims accrued. The relevant times for this inquiry are when Plaintiff was arrested, subjected to custodial interrogation, arraigned, and in pretrial detention.

The plain language of the statute encompasses all of these times. "[S]tatutory interpretation must begin with the plain language, giving all undefined terms their ordinary meaning while attempt[ing] to ascertain how a reasonable reader would understand the statutory text, considered as a whole." *Deutsch Bank Nat'l Trust Co. v. Quicken Loans, Inc.*, 810 F.3d 861, 868 (2nd Cir. 2015) (citation and internal quotation marks omitted). "If the plain language of the statute resolves the conflict without doing violence to the legislative scheme we are bound to follow it." *State v. Richards*, 256 A.3d 94, 98 (Vt. 2021) (citation and internal quotation marks omitted); *see also United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a

5

statute will produce a result demonstrably at odds with the intentions of its drafters." (citation and internal quotation marks omitted)).[1]

Defendants suggest that "imprisoned," for § 551(a) purposes, means something akin to—and exclusively—incarcerated in a correctional facility run by the Vermont Department of Corrections after conviction of a criminal offense. *See* Mot. to Dismiss 21-22.[2] But there is no reason why that word should be so narrowly and artificially construed, and, indeed, Defendants offer none. On the contrary, Black's Law Dictionary offers three definitions for "imprisonment," none of which is as narrow as Defendants suggest: "1. The act of confining a person, esp. in a prison," "2. The quality, state, or condition of being confined," and "3. The period during which a person is not at liberty." *Imprisonment, Black's Law Dictionary* (11th ed. 2019).[3]

Under any of these definitions, Plaintiff suffered imprisonment from the moment he was surrounded by approximately a dozen police officers, placed against a wall, searched, handcuffed, and told he was under arrest. *See* Compl. ¶ 106. His confinement and deprivation of liberty continued without interruption through his transportation to and processing at the BPD station and placement in a holding cell, *id.* ¶ 107, subsequent interrogation, *id.* ¶¶ 119-20, return to the holding cell, *id.* ¶¶ 131, 133, arraignment in

---

[1] There is some disagreement among federal courts as to whether, when construing state statutes, they should rely on federal or state rules of statutory construction. *See* Aaron-Andrew P. Bruhl, *Interpreting State Statutes in Federal Court*, 98 Notre Dame L. Rev. 61 (2022) (arguing that federal courts should use state rules and that, while the scholarly consensus is that the federal courts "are either confused about what to do or usually apply federal interpretive principles to state statutes," empirical analysis suggests federal courts usually rely on state interpretive rules). Though the choice is not outcome-determinative in this case, Plaintiff will provide citations to both Vermont and federal rules where appropriate.

[2] Plaintiff uses the shorthand Mot. to Dismiss to refer to Defendants' Memorandum of Law in Support of Their Joint Motion to Dismiss on Statute-of-Limitations Grounds, ECF No. 2-1.

[3] Likewise, neither of the two definitions Black's offers for "imprison" is so narrow: "1. To put into prison; to jail; incarcerate. 2. To keep (a person) somewhere so that the person is not at liberty, while preventing any departure." *Imprison, Black's Law Dictionary*. "Incarceration," in turn, is defined as "[t]he act or process of confining someone." *Incarceration, Black's Law Dictionary*. Either definition of "imprison," then, includes confinement or deprivation of liberty.

state court, *id.* ¶ 165, order to be held on bail, *id.* ¶ 167, charge for a federal offense and the dismissal of the state charges, *id.* ¶¶ 168-69, conviction, *id.* ¶ 170, successful motion for a new trial and vacated conviction, *id.* ¶¶ 172, 176, and plea to a different charge and eventual release on January 17, 2020, after spending more than four years in prison, *id.* ¶¶ 177-80. Defendants do not and cannot claim that Plaintiff was at liberty or was otherwise not confined at any point from the moment of his arrest on January 14, 2016, through his release from custody on January 17, 2020. Therefore, under the plain language of the statute, he is entitled to statutory tolling for all his claims, and the limitations clock only began to run upon his release. His claims are therefore timely.

This conclusion is confirmed by examination of the meaning of "imprisonment" as it is used in the common-law tort of false imprisonment. "[W]hen interpreting the meaning of the statute, this Court is compelled to give effect to the apparent intent of the legislature and must be guided by the fundamental principle that the common law in force at the time the statute was passed is to be taken into account in construing undefined words of the statute." *State v. Oliver*, 563 A.2d 1002, 1003 (Vt. 1989) (citations and internal quotation marks omitted); *see also Sekhar v. United States*, 570 U.S. 729, 732 (2013) ("It is a settled principle of interpretation that, absent other indication, [a legislature] intends to incorporate the well-settled meaning of the common-law terms it uses." (citation and internal quotation marks omitted)).

For purposes of the tort of false imprisonment, imprisonment broadly means being "confine[d] . . . within boundaries fixed by the [alleged tortfeasor]." Restatement (Second) of Torts § 35 (Am. L. Inst. 1965). Such confinement may be by "actual or apparent physical barriers," *id.* § 38, "overpowering physical force, or by submission to physical force," *id.* § 39, "submission to a threat to apply physical force to the other's

7

person," *id.* § 40, "submission to duress other than threats of physical force," *id.* ¶ 40A, or "*taking a person into custody under an asserted legal authority*," *id.* ¶ 41 (emphasis added). Here, too, confinement and deprivation of liberty—regardless of prison walls or criminal conviction—are the hallmarks of imprisonment. It is in this context that Vermont's imprisonment-tolling provision must be understood; this provision first appeared in Vermont's 1787 enactment that, for the first time, imposed a statute of limitations—and excepted those imprisoned from its ambit. *See Soc'y for Propagation of Gospel in Foreign Parts v. Town of Pawlet*, 29 U.S. 480, 505-06 (1830) (recounting this history).

### B. The Legislature intended that § 551(a) apply equally to pre-arraignment, pretrial, and post-conviction deprivations of liberty.

Even if the plain language of § 551(a) were ambiguous, and, again, it is not, this Court should still rule that its imprisonment-tolling provision applies to all of Plaintiff's claims because that is the only outcome consistent with the Legislature's intent.

The "touchstone" of statutory interpretation is "legislative intent," *State v. A.P.*, 268 A.3d 58, 61 (Vt. 2021), and if the plain text provides "insufficient guidance," the Court must "look beyond the language of a particular section standing alone to the whole statute, the subject matter, its effects and consequences, and the reason and spirit of the law." *State v. Thompson*, 807 A.3d 454, 458 (Vt. 2002). Looking to the harms that the legislature sought to address through § 551(a), it is clear that the legislature *intended* for it to apply in these circumstances.

The Supreme Court has recognized two main rationales for imprisonment-tolling provisions: "a State reasonably might conclude that some inmates may be loath[] to bring suit against adversaries to whose daily supervision and control they remain

8

subject, or that inmates who do file may not have a fair opportunity to establish the validity of their allegations while they are confined." *Hardin*, 490 U.S. at 544 (quoted in *Bain v. Cotton*, No. 2:06 CV 217, 2009 WL 1660051, at *4 (D. Vt. June 12, 2009)); *see also Aguiar v. Carter*, File No. 2:17-cv-121, 2018 WL 3966262, at *2 (D. Vt. Aug. 17, 2018) ("'[A] State reasonably might conclude that . . . inmates who do not [sic] file may not have a fair opportunity to establish the validity of their allegations while they are confined.'" (quoting *Hardin*, 490 U.S. at 544)). The Vermont Supreme Court has likewise noted that § 551(a) serves to mitigate imprisonment's impairment of a plaintiff's ability to effectively litigate their claims. *Quinn v. Gorczyk*, No. 2003-038, 2003 WL 25745715 (Vt. May 1, 2003) (mem.). In *Quinn*, the Court rejected application of § 551(a) tolling to claims that accrued while the plaintiff was released on furlough. Stating that, "[a]t the time his cause of action accrued, [the plaintiff] was not incarcerated in a correctional institution; he was living in the community, and therefore his ability to utilize the court system was not impaired," the Court concluded that he had "not established that he was 'imprisoned' within the meaning of Section 551(a)." *Id.* at *2.[4] The Court thus tied applicability of § 551(a) to the inability to effectively "utilize the court system" when not "living in the community."

    These justifications apply with equal force to pretrial versus post-conviction incarceration in a correctional facility. *See, e.g.*, *Evans v. Hebert*, 513 N.W.2d 164, 168-69 (Mich. Ct. App. 1994) ("[T]hose held in the state's custody are more restricted than ordinary citizens, and the restraints imposed by their confinement places them at a disadvantage compared to ordinary citizens. It could even be argued that pretrial

---

[4] Defendants argue that *Quinn* is an example of Vermont courts interpreting § 551(a) "narrowly," Mot. to Dismiss 20, but the *Quinn* Court simply interpreted § 551(a) so as to effectuate its purpose.

9

detainees are *more* restricted in their access to the legal system than those imprisoned after conviction, precisely because those in prison are better able to exercise the increased right to counsel, the right to have transcripts to trial records, and the access to law libraries [cited elsewhere]."). And they apply with even greater force to an individual confined in police custody pre-arraignment who might not ever be formally charged; such a person has an even stronger incentive not to risk antagonizing their custodian—and has much less opportunity to research and establish the validity of their claims.

Defendants offer no counterargument to or discussion of the first justification, but they do argue that the second justification no longer applies "in Twenty-First Century America" and point to cases Plaintiff filed while imprisoned as supposed proof. Mot. to Dismiss 19 & n.6. This Court rejected those precise arguments in *Bain*, 2009 WL 1660051, at *4-5, and, as Defendants concede, they nevertheless are irrelevant, given that § 551(a) remains on the books and the Legislature has not seen fit to repeal it, *see* Mot. to Dismiss 20. Moreover, even a cursory look at the outcomes of Plaintiff's other lawsuits shows that, in fact, regardless of one's ability to simply get a complaint on file, the barriers to *effectively* preserving and vindicating one's rights through litigation while imprisoned remain significant:

- *Chinnici v. Centurion of Vt., LLC*, No. 2:16-cv-264-wks-jmc
    - 2017 WL 2389562 (D. Vt. June 1, 2017) (denying Plaintiff's pro se motion for appointment of counsel, dismissing official-capacity claims on sovereign immunity grounds, granting leave to amend to name defendants in individual capacities)

    - 2018 WL 6002116 (D. Vt. Oct. 10, 2018) (recommending dismissal with prejudice of Plaintiff's complaint where, after being informed of consequences for failure to respond to defendants' summary judgment motion, Plaintiff failed to respond to it, "even though the Court granted him an extension of time to respond," and noting amendment would be futile as Plaintiff had "already been granted leave to amend his Complaint, and he did not avail himself of the opportunity")

10

- o 2018 WL 6002347 (D. Vt. Nov. 15, 2018) (adopting, with no objection filed, Oct. 10 report and recommendation and dismissing the case with prejudice)

- *Chinnici v. Pelkie*, No. 15-cv-124-SM, 2015 WL 4716233 (D.N.H. Aug. 6, 2015) (adopting, with no objection filed, report and recommendation denying Plaintiff's pro se motion for release where he failed to contest the Bureau of Prison's sentence-length calculations)

- *Chinnici v. O'Brien*, Civil Action No. 1:14CV29, 2014 WL 6841299 (N.D.W. Va. Dec. 3, 2014) (adopting, with no objection filed, report and recommendation that Plaintiff's pro se habeas petition be denied as to some claims as procedurally defaulted (with no argument that the default was excusable) and others for failure to exhaust administrative remedies)

- *United States v. Chinnici*, No. 2:06 CR 15-1, 2013 WL 3967919 (D. Vt. July 31, 2013) (adopting, with no objection, report and recommendation that Plaintiff's pro se habeas petition be denied as procedurally defaulted, time-barred, and meritless)

- *Chinnici v. Edwards*, No. 1:07-cv-229, 2008 WL 3851294 (D. Vt. Aug. 12, 2008) (adopting, without objection, report and recommendation that court grant defendants' unopposed motions to dismiss Plaintiff's pro se complaint).

These cases individually and collectively show that Plaintiff's pro se filings were repeatedly denied and dismissed, generally for failure or inability to respond to motions and recommendations or to otherwise effectively pursue his claims. Thus, contrary to Defendants' implication that Plaintiff's ability to file complaints while imprisoned demonstrates that § 551(a) tolling is no longer necessary, this history instead demonstrates how difficult it is for imprisoned individuals to make it past even the preliminary phases of litigation, much less effectively research their claims, draft an adequately pleaded complaint, engage in discovery and resolve related disputes, research and brief motions and opposition papers—that is, to shoulder all the burdens of a complex lawsuit.

Put simply, the problem that imprisonment-tolling provisions seek to mitigate isn't simply any difficulty in getting a complaint on file; it's the barriers imprisoned individuals face in *effectively* litigating their cases to completion and vindicating their rights. *See Hardin*, 490 U.S. at 544 (noting that such tolling provisions respond to the fact that imprisoned individuals, even those who are able to get a complaint on file, "may not have a fair opportunity to establish the validity of their allegations while they are confined"); *Bain*, 2009 WL 1660051, at *4 (quoting this language from *Hardin*); *Aguiar*, 2018 WL 3966262, at *2 (same); *see also Evans*, 513 N.W.2d at 168-69 (noting that pretrial detainees may face even greater burdens in effectively litigating their cases than those sentenced upon conviction). Thus, Defendants' citation to Plaintiff's prior, unsuccessful lawsuits demonstrates precisely why it makes sense and serves the interests of justice to toll the limitations clock for claims that accrue while imprisoned.

For these reasons, the Court should effectuate the Legislature's intent and find that § 551(a) tolled all of Plaintiff's claims.

### C. Courts have routinely applied § 551(a) and other states' analogs to pre-arraignment and pretrial deprivations of liberty.

Following this plain language and commonsense approach to imprisonment-tolling provisions, many courts have applied tolling to periods of deprivation of liberty and confinement before conviction on a criminal charge. In Vermont, for example, this Court applied § 551(a) to claims that accrued "during the investigation that occurred prior to his 2011 conviction" while the plaintiff was apparently in pretrial detention. *Aguiar*, 2018 WL 3966262, at *2-3. There, the government conceded that the plaintiff was "incarcerated prior to, and at the time of, his conviction," but nevertheless urged the

12

court to reject tolling as "inconsistent with federal policy." *Id.* at \*3. The Court rejected the government's argument, citing, *inter alia*, *Hardin*, 490 U.S. at 544. *Id.*

Likewise, this Court applied § 551(a) to toll claims that accrued simultaneously with or shortly after the plaintiff's arrest but before his release on bail eleven months later. *Beaupre v. O'Connor*, No. 2:14-CV-256, 2015 WL 5530180, at \*3 (D. Vt. Sept. 18, 2015). Police arrested the plaintiff and had his car seized and impounded on the same day, allegedly absent probable cause or consent. *Id.* at \*1. The court noted that a "plaintiff generally is deemed to be on notice of a seizure of property incident to an arrest when the item is seized," and therefore this claim accrued that day—but applied tolling up through his release on bail. *Id.* at 2-3;[5] *see also Bain*, 2009 WL 1660051 (applying § 551(a) to toll claims that accrued during pretrial detention[6]); *Finley v. Hersch*, No. 1:12-CV-162-JGM, 2013 WL 3450270 (D. Vt. July 9, 2013) (applying § 551(a) to claims that accrued pre-conviction; order is not clear whether plaintiff was in pretrial detention or not in custody at all at the time the claims accrued, but finding, even with tolling, his complaint was not timely filed). This Court is in good company. The weight of authority is that tolling provisions like Vermont's apply without regard to whether the defendant had already been convicted at the time their claims accrued. *See Elliott v. City of Union City*, 25 F.3d 800, 802 n.4 (9th Cir. 1994) ("[W]e note that other

---

[5] The Court did not specify whether the plaintiff was in police custody or already lodged at a correctional facility when the seizure occurred, perhaps because it did not think that distinction made a material difference in the analysis, but, in any event, the plaintiff plainly was not in prison following a conviction on the day of the arrest (and, indeed, was still not convicted eleven months later when he was released on bail).

[6] It is not clear when the plaintiff was convicted, but it is clear that his claims arose before his trial and conviction. The plaintiff was arrested on May 22, 2003, and placed into state custody. His claim accrued on July 6, 2003, while he was still in state custody but before his trial, *see State v. Bain*, 975 A.2d 628, 631 (Vt. 2009) (noting hearings on Bain's motion to suppress in July and October of 2004), and he filed his complaint on November 1, 2006, more than three years later.

13

circuits have construed similar state statutes and that the weight of authority supports tolling for pre-arraignment or pre-trial custody." (citing cases)).

On the other side of the ledger, Defendants cite two cases with contrary holdings, Mot. to Dismiss at 22, but neither case supports a broader proposition that language like § 551(a)'s applies only to post-conviction incarceration, nor do they have anything to say about how this Court should interpret § 551(a). All these cases do is confirm that, in some states with unique legislative histories absent here, legislatures intended to and did limit their tolling statutes beyond their plain meaning. But Vermont did no such thing.

First, Defendants cite *Jones v. City of Hamtramck*, 905 F.2d 908, 908 (6th Cir. 1990) (per curiam), in which the Sixth Circuit held that Michigan's imprisonment-tolling statute did not apply "to a person who is merely under arrest" when his claims accrued.[7] But, for several reasons, *Jones* has very little to offer this Court in its analysis and interpretation of § 551(a). First and foremost, the Michigan Court of Appeals thoroughly dismantled *Jones*'s rationale in *Evans*, 513 N.W.2d at 167-69, and stated that the plain language and purpose of the provision did not support *Jones*'s conclusion. Moreover, the *Jones* court reached its conclusion without any analysis or reasoning, while simultaneously rejecting contrary dicta without explanation from an earlier panel of the court. *See* 905 F.2d at 909 (citing *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988), as "suggesting that the tolling statute applies from the time of the

---

[7] It is not clear why the court later states that tolling does not apply to claims that accrued while "he was a pretrial detainee," *id.* at 909, unless the court was treating all pretrial custody, whether under arrest by the police or in correctional facility, as "pretrial detention." But any such a holding directly conflicts with an earlier (but unmentioned) Sixth Circuit decision that applied Ohio's imprisonment-tolling statute to claims that accrued while in pretrial detention. *See Evans*, 513 N.W.2d at 167 (noting the *Jones* court's failure to acknowledge or reckon with this precedent). Thus, *Jones*, to the extent it can be understood, is best understood as applying solely to the period between arrest and lodging.

14

initial arrest if the arrest is followed by detention"). Instead, it cited as support an earlier Sixth Circuit case holding tolling inapplicable to claims that accrued before the plaintiff turned himself in to police, *Perreault v. Hostetler*, 884 F.3d 267 (6th Cir. 1989), which in turn cited a Michigan Court of Appeals decision holding that the tolling provision applied to "all who are incarcerated when a cause of action accrues," *Hawkins v. Justin*, 311 N.W.2d 465, 468 (Mich. Ct. App. 1981) (per curiam).

Notably, neither *Jones* nor *Perreault* note that the central holding of *Hawkins*: it interpreted the tolling provision to apply broadly to "*all* who are incarcerated" and rejected the defendant's argument that one who would seek to invoke its protections must first make a special showing of their specific disability. *Id.* at 168 (emphasis added). The *Hawkins* court thus declined the defendant's request that it narrow the statute's reach contrary to its plain terms. Nothing in *Hawkins* dealt with the meaning of "imprisoned" for tolling purposes, nor, as noted by *Evans*, does it support *Jones*'s cursory conclusion that "imprisonment" does not include arrest or pretrial detention. *See Evans*, 513 N.W.2d at 398 ("More importantly, we note that if the *Jones* court's decision intended to address all pretrial detention, it adopted a stance directly contrary to the Sixth Circuit's earlier interpretation of the term 'imprisoned' in Ohio's [imprisonment-tolling statute]." (citing *Austin v. Brammer*, 555 F.3d 142, 143 (6th Cir. 1977) (per curiam) (rejecting "Defendants' claim that 'imprisonment' within the meaning of the statute means only confinement in a penitentiary following conviction" as having "no support that we are aware of in Ohio law"))).

Moreover, while *Perreault* did reckon with the meaning of "imprisoned," its refusal to interpret that term to cover claims that accrued before the plaintiff was even arrested is entirely uncontroversial and does not support the unreasoned conclusion in

15

*Jones*. *See Evans*, 513 N.W.2d at 167 ("[W]e also note that in [*Perreault*], cited in the concluding statements in *Jones*, the determinative fact in disposing of Perreault's [statutory] tolling argument was that his claims of police misconduct during his arrest arose *before he had actually been arrested and taken into custody*." (emphasis in original).

While *Evans* makes clear that the *Jones* court's cursory plain-language analysis got it wrong, the *Evans* court nevertheless agreed with its ultimate conclusion that Michigan's imprisonment-tolling provision did not apply at any point before conviction. 513 N.W.2d at 169-70. It reached this outcome not based on the statute's plain language, or on the general purpose of imprisonment-tolling provisions, but rather based on its review of legislative history specific to Michigan's statute that suggested a legislative intent to impose greater restrictions on the term "imprisoned" than would appear on its face. *Id.* at 169. Absent this legislative history, the *Evans* court would have held, consistent with the statute's plain language and contrary to *Jones*, that tolling "extends to a plaintiff prisoner's period of pretrial detention." *Id.* at 168-69; *see also id.* at 168 (citing favorably cases interpreting tolling to commence on arrest and extend through any period of continuous custody[8]).

This Court should therefore not look to *Jones*'s conclusory treatment of Michigan's tolling statute for guidance in interpreting § 551(a), both because the Michigan Court of Appeals has rejected its reasoning[9] and because that statute must be

---

[8] The plaintiff in *Evans* was in county jail when his claims arose, so the court did not have cause to consider whether tolling extended back to the initial arrest.

[9] The Ninth Circuit similarly distinguished and declined to follow *Jones* and noted it was against the weight of authority. *See Elliott*, 25 F.3d at 802 n.4.

considered against Michigan's unique legislative history backdrop, a history that is absent here.

Defendants' citation to *Luckett v. Sudbury*, Case No. 20-cv-0932-MMA-JLB, 2020 WL 3402251 (S.D. Cal. June 18, 2020), is no more persuasive. Defendants cite *Luckett* for the proposition that tolling does not apply to the period when the plaintiff "was in trial and had not yet been convicted," *id.* at *3. As an initial matter, *Luckett* was a sua sponte dismissal of a pro se prisoner's complaint under 28 U.S.C. § 1915(e)(2) and § 1915A, issued without the benefit of briefing from either party. Moreover, the relevant language from *Luckett* is dicta, as (1) the court had already denied the plaintiff leave to file in forma pauperis for failure to comply with required procedures, so the complaint was "therefore subject to dismissal on that ground alone," and (2) the court stated that, even with tolling, the complaint was filed after the limitations period had ended. 2020 WL 3402251, at *1-2, 3.

In any case, as in *Jones*, *Luckett* engaged in no reasoning, and instead without further analysis cited a case that is inapplicable here and, in any event, has been widely criticized. *Id.* at 3 (citing *Austin v. Medicis*, 230 Cal. Rptr. 3d 528 (Cal. Ct. App. 2018), and a district court case applying it). *Austin* did, in fact, hold that "a plaintiff is 'imprisoned on a criminal charge' within the meaning of [California's imprisonment-tolling statute] if he is serving a term of imprisonment in the state prison." 230 Cal. Rptr. 3d at 531. But it did so based on legislative history that, again, is foreign to Vermont.

California's original imprisonment-tolling provision was enacted simultaneously with, and in an effort to mitigate the effects of, California law confining those sentenced to a term of imprisonment in state prison to a civil death (permanently, in the case of

17

life sentences, or otherwise during the term of such incarceration). *Id.* at 538-39. Among the rights denied to the civilly dead was the right to bring any civil action. *Id.* ("A civil death sentence extinguished the civil, legal, and political rights of people convicted of certain offenses. Without those rights, convicts could not bring civil actions or perform any legal function."). Those imprisoned in a county jail for a misdemeanor conviction, however, were not civilly dead. *Id.* at 539. As California's tolling provision was intended to permit prisoners to sue upon expiration of the suspension of their rights and last so long as such suspension continued, it was interpreted as applying solely to those whose rights were suspended: those incarcerated in a state prison after conviction. *Id.* at 540 ("Yet since statutory tolling existed to ameliorate statutorily imposed disabilities, it only applied to prisoners who *actually suffered* legal disabilities—felons sentenced to state prison. Thus, the tolling statute did not apply to county jail inmates.").

Several years after California repealed its civil death provisions, it enacted the current tolling provision, which replaced tolling for the entire period of imprisonment with tolling for up to two years during such period. *Id.* at 541. In so doing, per *Austin*, "the Legislature was plainly focused on limiting the indefinite statutory tolling formerly granted to civilly dead state prison inmates. There is no indication the Legislature, in so doing, intended to *expand* tolling to local inmates in pretrial custody." *Id.* at 542.

Thus, *Austin*, with its interpretation of legislative intent against the backdrop of its civil death laws, and *Luckett*, with its reliance on *Austin*, cannot aid in interpretation of Vermont's imprisonment-tolling statute, as Vermont has never subjected prisoners to civil death.[10] *See* Mot. to Dismiss 19 (quoting *Town of Baltimore v. Town of Chester*, 53

---

[10] Moreover, even if *Austin* were relevant in the Vermont context, this Court should be hesitant to rely on it, for the reasons set forth exhaustively in *Ruiz v. Ahern*, No. 20-cv-01089-DMR, 2020 WL

Vt. 315, 319 (1881)). On the contrary, Vermont's enactment of the tolling provision notwithstanding the lack of a legal prohibition against prisoners filing civil lawsuits suggests the Legislature saw the *fact of deprivation of liberty* alone as creating the need for tolling. And this need exists regardless of whether the deprivation is pre-arraignment, post-arraignment but pretrial, or post-conviction.

Defendants ask this Court to construe § 551(a) contrary to its prior decisions and against the weight of authority, but the only cases they provide to support this request reveal on closer inspection why the Court should decline the invitation and, instead, conclude that § 551(a) applies to each of Plaintiff's claims and that his complaint was therefore timely filed.

## Conclusion

For the reasons set forth above, the Court should deny Defendants' Joint Motion to Dismiss.

Lia Ernst
ACLU Foundation of Vermont
PO Box 277
Montpelier, VT 05601
(802) 223-6304
lernst@acluvt.org

Hillary Rich
ACLU Foundation of Vermont
PO Box 277
Montpelier, VT 05601
(802) 223-6304
hrich@acluvt.org

*Counsel for John Chinnici*
Dated: April 27, 2023

---

4001465, at 4-7 (N.D. Cal. July 15, 2020). *Ruiz* also notes that courts within the Ninth Circuit are divided as to whether *Austin* governs federal courts' consideration of California's statute. *Id.* at 5.