UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| JOHN CHINNICI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:23-cv-52-kjd |
| | ) | |
| TOWN OF BENNINGTON, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR JOINT MOTION TO DISMISS ON STATUTE-OF-LIMITATIONS GROUNDS**

Plaintiff John Chinnici "does not dispute that, absent some kind of tolling, his complaint would be outside the statute of limitations and thus untimely." Doc. 15 at 4. He also does not dispute (solely for the purposes of this Motion) the various dates by which each of his four claims accrued, and he concedes that equitable tolling is unavailable to him. *See id.* "The only issue, therefore, that this Court need consider in resolving the pending motion is the applicability to Plaintiff's claims of 12 V.S.A. § 551(a)'s provision tolling the statute of limitations for claims that accrue while the plaintiff is 'imprisoned' until such time as that disability is removed." *Id.*

The Defendants appreciate Plaintiff's candor, which will allow them to focus their Reply on this lone issue of law. In sum, Plaintiff cannot establish his entitlement to tolling under Section 551(a), which is his burden to bear. *See Overall v. Estate of Klotz,* 52 F.3d 398, 403 (2d Cir. 1995); *Yates v. Cunningham,* 2013 WL 557237, *2 (W.D.N.Y. 2013); *Merrill v. Reville,* 135 Vt. 517, 520 (1977); *Hunter v. Hunter,* 237 S.W.2d 100, 104 (Mo. 1951) ("Statutes of limitations are favored in the law, and cannot be avoided unless the party seeking to do so brings himself strictly within some exception.") (internal quotation marks omitted). Thus, as explained below, all of his claims against the Defendants should be dismissed with prejudice as time-barred.

McNEIL
LEDDY &
SHEAHAN

271 South Union St.
Burlington, VT 05401
T 802 863 4531
F 802 863 1743

www.mcneilvt.com

1

**PLAINTIFF CANNOT SATISFY HIS BURDEN OF ESTABLISHING THAT SECTION 551(a) PRESERVES HIS CLAIMS FROM BEING TIME-BARRED**

According to Plaintiff, from the moment of his arrest on January 14, 2016, he "was *confined to law enforcement custody* until he regained his liberty on January 17, 2020."  Doc. 15 at 2 (emphasis added).  Strictly speaking, the term "law enforcement" does not include several of the governmental actors—both federal and state—that might have had him in their custody at some point during that approximately four-year time period.  Of those governmental actors that are currently known to the Defendants, only they may be properly called "law enforcement," and their custody of him ended no later than his arraignment in state court on January 15, 2016.  For most (if not all) of the time period thereafter pertinent to this Motion (from his arraignment until his conviction in late July 2018), he appears to have been in the custody of the Vermont Department of Corrections ("VDOC"), one of six subdivisions of the Vermont Agency of Human Services, and its Correctional Officers are not technically "law enforcement."[1]

Plaintiff's Complaint is also unclear as to whether he was in fact continuously in VDOC custody, or whether there were any breaks in custody that would end any tolling under Section 551(a).  *See Kaiser v. Cahn,* 510 F.2d 282, 286 (2d Cir. 1974) (prohibiting "tacking" of disability periods for tolling purposes); *Tester v. Pallito,* 2020 WL 2813607, *4 (D. Vt.), *report & recommendation adopted,* 2020 WL 2793164 (D. Vt. 2020) (same); *Beaupre v. O'Connor,* 2015 WL 5530180 (D. Vt. 2015) ("It is unclear from the face of the complaint when these events allegedly occurred."); *Finley v. Hersch,* 2013 WL 3450270, *4 (D. Vt. 2013) (complaint omitted incarceration dates); *Gilbeau v. Pallito,* 2012 WL 2416719, *7 (D. Vt.), *report & recommendation*

---

[1]    *See*    https://doc.vermont.gov/;    https://humanservices.vermont.gov/about-us/departments; https://outside.vermont.gov/dept/DOC/Policies/Policy%20Glossary%20of%20Terms.pdf (defining "Law Enforcement Officer" as "An officer certified by the Vermont Criminal Justice Training Council as provided in 20 V.S.A. §§ 2355-2358 or appointed by the Commissioner of Public Safety as provided in 20 V.S.A. § 1911."); 20 V.S.A. § 2351a(2)-(3) (defining "Law enforcement agency" and "Law enforcement officer" in terms not including Correctional Officers employed by VDOC).

McNEIL
LEDDY &
SHEAHAN

271 South Union St.
Burlington, VT 05401
T  802 863 4531
F  802 863 1743

www.mcneilvt.com

*adopted,* 2012 WL 2416654 (D. Vt. 2012) (no tacking); *Jadallah v. Town of Fairfax,* 2018 VT 34 ¶ 19, 207 Vt. 413, 421 (2018) (imprisoned after accrual); *Quinn v. Gorczyk,* 2003 WL 25745715, *2 (Vt. 2003) (unpublished entry order by three-judge panel) (same).  The Defendants point out this opacity in Plaintiff's Complaint to counter his assertion that they "*do not and cannot claim that Plaintiff was at liberty or was otherwise not confined at any point from the moment of his arrest on January 14, 2016, through his release from custody on January 17, 2020.*"  Doc. 15 at 7 (emphasis added).  On the contrary, it is only the current procedural posture of this case—the pleading stage—that bars the Defendants from contesting this right now.[2]

Plaintiff's first argument is that the plain meaning of Section 551(a) tolls the running of the statute of limitations for the claims of everyone who might call themselves "imprisoned," including arrestees and pretrial detainees.  "The question for the Court, then, is whether Plaintiff was 'imprisoned,' within the meaning of the statute, when his claims accrued."  Doc. 15 at 5.  In so arguing, Plaintiff focuses on the word "imprisoned" and ignores the word "disability."

Isolating words is an improper method of deriving a statute's plain meaning.  *See State of Vermont v. Thompson,* 174 Vt. 172, 176 (2002) (cited by Plaintiff).  "We will not interpret a single word or phrase in isolation from the entire statutory scheme."  *State of Vermont v. Blake,* 2017 VT 68 ¶ 9, 205 Vt. 265, 271 (2017).  Rather, plain meaning can be understood only when a text is "considered as a whole."  *Deutsch Bank National Trust Co. v. Quicken Loans, Inc.,* 810 F.3d 861, 868 (2d Cir. 2015) (cited by Plaintiff).  "Our rules of statutory construction require us to consider the statute as a whole giving effect to a statute's every word, sentence, and clause, when possible."

---

[2] If the evidence reveals otherwise, the Defendants reserve the right to challenge Plaintiff's invocation of Section 551(a) again at the appropriate time.  For example, in his Complaint, he does not explain why, if he "was ordered held on $100,000 bail, an amount that was subsequently reduced to $50,000" (Complaint ¶ 167), he did not post bail or a bond to obtain his immediate release; or why, after this Court vacated his conviction on December 19, 2019 (*see id.* ¶ 176), he allegedly remained in prison for nearly a month without any charges pending against him (*see id.* ¶¶ 177-180).  There might have been other legally significant gaps in his alleged incarceration that only discovery will reveal, if this case gets that far.

McNEIL
LEDDY &
SHEAHAN

271 South Union St.
Burlington, VT 05401
T 802 863 4531
F 802 863 1743

www.mcneilvt.com

3

*Holton v. Department of Employment & Training,* 2005 VT 42 ¶ 21, 178 Vt. 147, 156 (2005).  "We consider the whole and every part of the statute and avoid a construction that would render part of the statutory language superfluous."  *Baldauf v. Vermont State Treasurer,* 2021 VT 29 ¶ 19, 215 Vt. 18, 28 (2021) (internal quotation marks omitted).

Section 551(a) does not define the word "disability."  "We presume that the Legislature intended the plain, ordinary meaning of statutory words, which, if undefined in the statute, we may discern 'by consulting dictionary definitions.'"  *State of Vermont v. Turner,* 2021 VT 30 ¶ 10, 214 Vt. 464, 470 (2021) (quoting *Toensing v. Attorney General of Vermont,* 2019 VT 30 ¶ 7, 210 Vt. 74, 78 (2019)).  The leading legal dictionary—Black's—defines "disability" as:

> **1.** The inability to perform some function, esp., the inability of one person to alter a given relation with another person.  **2.** An objectively measurable condition of impairment, physical or mental, esp. one that prevents a person from engaging in meaningful work. . . .  **3.** Incapacity in the eyes of the law.

BLACK'S LAW DICTIONARY 559 (10th ed. 2014).  Black's also defines specific kinds of disabilities, two of which illuminate "disability" as that word is used in Section 551(a).  A "legal disability" is "[a] *court-determined lack of capacity* to act for oneself in managing or administering financial affairs, usu. because the person is a minor or has a mental impairment."  *Id.* (emphasis added).  And a "civil disability" is "[t]he condition of a person who has had a legal right or privilege revoked *as a result of a criminal conviction,* as when a person's driver's license is revoked after a DWI conviction.  Cf. *civil death*. . . ."  *Id.* at 560 (emphasis added).

While Plaintiff might have been "imprisoned" for Section 551(a) purposes **after** his conviction, his alleged **pretrial** confinement (in VDOC custody or otherwise) fits none of Black's definitions of "disability."  Plaintiff's litigiousness while in VDOC custody shows that he experienced no practical inability to pursue his claims against the Defendants while he was a

McNEIL
LEDDY &
SHEAHAN

271 South Union St.
Burlington, VT 05401
T  802 863 4531
F  802 863 1743

www.mcneilvt.com

pretrial detainee.[3]  His Complaint alleges no objectively measurable condition of impairment (such as minority, a mental condition, or a psychiatric disability) that might have prevented him from pursuing his claims at any time before his conviction in late July 2018.  He alleges no recognized incapacity in the eyes of the law.  He alleges no court-determined lack of capacity to act for himself that might amount to a legal disability.  He alleges no revocation of any relevant legal right or privilege "as a result of a criminal conviction" that might amount to a civil disability.  BLACK'S LAW DICTIONARY at 560.  And he agrees that the concept of "civil death" never took root in Vermont.  Doc. 15 at 18.[4]  In short, even if he had been in VDOC custody continuously from arraignment in state court until his conviction in federal court, he suffered no identifiable "disability" as either an arrestee or a pretrial detainee during that time period.

As for "imprisoned," Plaintiff argues that "there is no reason why that word should be so narrowly and artificially construed" in Section 551(a) to apply only to convicted criminals, rather than arrestees and/or pretrial detainees, "and, indeed, Defendants offer none."  Doc. 15 at 6.  But as the Defendants argued in support of this Motion, courts throughout the nation strictly construe tolling provisions.  *See Overall,* 52 F.3d at 404 (New York law); *Yates,* 2013 WL 557237 at *3

---

[3] Plaintiff argues that his litigation history "demonstrates how difficult it is for imprisoned individuals . . . to shoulder all the burdens of a complex lawsuit."  Doc. 15 at 11.  On the contrary, his failures show only the perils of litigating *pro se.*  His Complaint does not allege any difficulty retaining counsel or that he even tried to do so.  VDOC inmates have the right to unlimited visits from their attorneys.  *See* https://outside.vermont.gov/dept/DOC/Policies/Interim%20Memo%20on%20Inmate%20Visits%20-%20Attorney%20Information.pdf.  Even those inmates who choose to go it alone have at their disposal legal resources that meet or exceed those available to the average Vermont solo practitioner.  *See* https://outside.vermont.gov/dept/DOC/Policies/Inmate%20Access%20to%20Courts%20Inmate%20Handbook.pdf.  These resources include classes on the law that are unavailable to the general public.  *See id.*

[4] "The rule in respect to maintenance of actions by prisoners derives from the common law doctrine that a convicted felon was *civiliter mortuus* (civilly dead)."  *Heard v. Caldwell,* 364 F. Supp. 419, 421 (S.D. Ga. 1973).  In states that followed this common-law doctrine, only claims of the "civilly dead"—convicted felons—were preserved by tolling until release from prison.  Ergo, by definition, arrestees and/or pretrial detainees in those states could not avail themselves of tolling for the imprisoned.  This—rather than the Restatement (Second) of Torts sections on the tort of false imprisonment that Plaintiff cites (*see* Doc. 15 at 7-8)—is the common-law background against which Section 551(a) should be judged.  Surely Vermont legislators were aware of, and took guidance from, the doctrine of civil death when they enacted that statute, even if Vermont courts, years later, would reject civil death as part of this state's common law.

McNEIL
LEDDY &
SHEAHAN

271 South Union St.
Burlington, VT 05401
T  802 863 4531
F  802 863 1743

www.mcneilvt.com

(same); *Chambers v. Nelson,* 737 S.W.2d 225, 227 (Mo. Ct. App. 1987) ("Because statutes of limitations are favored in the law, exceptions are strictly construed."); *Graham v. Catron,* 1982 WL 613011, *1 (Va. Cir. Ct. 1982) (same); *Dodge v. Montrose Potato Growers Cooperative Ass'n,* 524 P.2d 1394, 1396 (Colo. Ct. App. 1974) (same).  Specifically: "In cases involving imprisonment, exceptions to the statute of limitations are to be strictly construed."  *Lewis v. Shuck,* 623 P.2d 520, 523 (Kan. Ct. App. 1981) (citing *Rich v. Commissioner of Internal Revenue,* 250 F.2d 170, 175 (5th Cir. 1957); *Hunter,* 237 S.W.2d at 104; *Bock v. Collier,* 151 P.2d 732, 734 (Ore. 1944)).  There is no reason to believe that Vermont courts would depart from this rule of strict construction of tolling provisions benefitting the imprisoned.

Pursuant to this rule of strict construction, Vermont courts would most likely rule that any disability under Section 551(a) arising from imprisonment must be preceded by "a criminal conviction."  BLACK'S LAW DICTIONARY at 560.  Thus, arrestees and/or pretrial detainees cannot benefit from Section 551(a) unless and until they are convicted, which did not happen to Plaintiff until after each of his claims against the Defendants had already accrued.  As a result, he cannot avail himself of Section 551(a)'s imprisonment-tolling provision.  *See Jadallah,* 2018 VT 34 ¶ 19, 207 Vt. at 421; *Lincoln v. Norton,* 36 Vt. 679, 680 (1864); *Tracy v. Atherton,* 36 Vt. 503, 515-17 (1864); *McFarland v. Stone,* 17 Vt. 165, 175 (1845).  Plaintiff cites nothing suggesting that the Vermont Legislature intended otherwise when enacting Section 551(a).[5]

---

[5] Plaintiff notes that Vermont's imprisonment-tolling provision "first appeared in Vermont's 1787 enactment that, for the first time, imposed a statute of limitations—and excepted those imprisoned from its ambit."  Doc. 15 at 8.  But this provision's age proves little regarding the intent of the Legislature that enacted it.  "[V]ermont's earliest criminals seldom went to jail. . . ."  Mark Bushnell, *Then Again: In Early Vermont, Criminal Justice Was Swift & Harsh,* VT. DIGGER (July 14, 2019) (available at  https://vtdigger.org/2019/07/14/then-again-in-early-vermont-criminal-justice-was-swift-and-harsh/).  "Many crimes were punishable by death. . . .  Whippings were common and mutilations not unheard of."  *Id.*  "The nascent state had no jails, only the counties did.  And those were reserved mostly for debtors, who would work off their debts in the community during the day and return to their cells at night.  County jails would occasionally hold felons while they awaited their punishment.

McNEIL
LEDDY &
SHEAHAN

271 South Union St.
Burlington, VT 05401
T 802 863 4531
F 802 863 1743

www.mcneilvt.com

6

Plaintiff's second argument concerning the legislative intent behind Section 551(a) is founded upon the "two main rationales for imprisonment-tolling provisions." Doc. 15 at 8. The U.S. Supreme Court postulated that "a State reasonably might conclude that some inmates may be loathe [*sic*] to bring suit against adversaries to whose daily supervision and control they remain subject, or that inmates who do file may not have a fair opportunity to establish the validity of their allegations while they are confined." *Hardin v. Straub,* 490 U.S. 536, 544 (1989). While that may be true in a general sense, Plaintiff cites nothing suggesting that the Vermont Legislature has ever reached either conclusion in relation to Section 551(a).

Moreover, neither of these "two main rationales" has any bearing on this case. The first rationale contemplates lawsuits by prisoners against their jailers, who if sued could retaliate in a myriad of ways. In contrast, Plaintiff's "adversaries" in this lawsuit are the Defendants, who are not prison guards and could not subject him to their "daily supervision and control" once he was transferred to VDOC custody in early 2016. And his Complaint alleges no facts suggesting that he lacked a fair opportunity to establish the validity of his allegations while confined.[6]

Plaintiff goes even further afield, arguing that these two main rationales "apply with even greater force to an individual *confined in police custody pre-arraignment who might not ever be*

---

Society had no use for long prison terms." *Id.* The idea of a penitentiary, "literally 'a place to do penance,'" was untested in 1787. *Id.* "Pennsylvania built the first state prison in 1790," where prisoners were kept in solitary confinement to force them to contemplate their sins. *Id.* "When it was completed in 1810," Vermont's state prison was "only the fourth state prison built in America." *Id.* There is no clear indication from this history that the Legislature in 1787 intended the word "imprisoned" to apply to arrestees and/or pretrial detainees.

[6] Plaintiff argues that this Court "rejected those precise arguments" in *Bain v. Cotton,* 2009 WL 1660051, *4-*5 (D. Vt. 2009). Doc. 15 at 10. On the contrary, the defendant in *Bain* challenged the "policy" behind Section 551(a) as "outdated." *Bain,* 2009 WL 1660051 at *4. It does not appear that Dr. Cotton ever asked this Court to engage in statutory interpretation (as the parties do here), but rather argued that "the policy behind Vermont's tolling statute for imprisoned inmates is no longer valid. . . ." *Id.* Thus, the *Bain* Court apparently did not engage in statutory interpretation so as to allow for tolling of the statute of limitations governing the claims of arrestees or pretrial detainees, but rather rejected Dr. Cotton's policy-based argument. In contrast, the Defendants make no policy-based arguments here.

McNEIL
LEDDY &
SHEAHAN

271 South Union St.
Burlington, VT 05401
T 802 863 4531
F 802 863 1743

www.mcneilvt.com

7

*formally charged*; such a person has an even stronger incentive not to risk antagonizing their custodian—and has much less opportunity to research and establish the validity of their claims." Doc. 15 at 10 (emphasis added). Not only is his argument unsupported by authority, it ignores the facts of this case. He ***was*** formally charged—in state court on the day after his arrest (January 15, 2016). No one expected him to research and establish the validity of his claims during the approximately one-day time period that he spent in the Defendants' custody. He had three years from accrual of each of his claims to do so; that he chose to fritter away his time with lawsuits against others did not relieve him of the obligation "to take some affirmative action." *Longe v. Boise Cascade Corp.,* 171 Vt. 214, 225 (2000).

In *Chambers,* the plaintiff claimed that the two police officers who had arrested him more than three years earlier had also stolen $12,000 in cash from him on that day. *See Chambers,* 737 S.W.2d at 226. The Missouri Court of Appeals affirmed the dismissal of the case as time-barred. "Because Chambers was not in prison 'at the time the cause of action accrued,' the tolling provision does not stop the running of the statute" of limitations. *Id.* at 227. Although the *Chambers* Court did not use the term "pretrial detainee" to describe the plaintiff, the clear implication is that merely being in law-enforcement custody, as the plaintiff had been at the time of the alleged theft, is not the same as being "imprisoned" for tolling purposes.[7]

Finally, Plaintiff argues that "[c]ourts have routinely applied § 551(a) and other states' analogs to pre-arraignment and pretrial deprivations of liberty." Doc. 15 at 12 (bold omitted). With all due respect, this argument takes great liberty with the case law cited in support thereof. Indeed, the Defendants are aware of no case—and Plaintiff cites none—in which a Vermont court

McNEIL
LEDDY &
SHEAHAN

271 South Union St.
Burlington, VT 05401
T 802 863 4531
F 802 863 1743

www.mcneilvt.com

---

[7] Thus, if nothing else, the claims asserted in Counts I and II, both of which accrued while Plaintiff was in the custody of the Defendants (*i.e.,* "law enforcement"), should be dismissed as time-barred.

has ever definitively ruled that Section 551(a) tolls the running of the statute of limitations for claims that accrued while a plaintiff was either an arrestee or a pretrial detainee.

Rather, Plaintiff goes to great lengths to denigrate two cases that the Defendants previously cited that arose in two other jurisdictions—Michigan and California, respectively. *See* Doc. 15 at 14-19. At most, by doing so, he shows only that the imprisonment-tolling provisions in these two states are subject to robust debate among the federal and state courts alike. *Compare Jones v. City of Hamtramck,* 905 F.2d 908 (6th Cir.), *cert. denied,* 498 U.S. 903 (1990); *Luckett v. Sudbury,* 2020 WL 3402251 (S.D. Cal. 2020); *with Elliott v. City of Union City,* 25 F.3d 800 (9th Cir. 1994); *Evans v. Hebert,* 513 N.W.2d 164 (Mich. Ct. App. 1994).[8]

Take California. In *James v. County of Sacramento,* 2012 WL 2116553 (E.D. Cal.), *report & recommendation adopted,* 2012 WL 3249523 (E.D. Cal. 2012), the Court ruled: "[P]laintiff was a pretrial detainee when he filed this action. Accordingly, the tolling provisions of state law—which toll the statute of limitations for a period of up to two years based on the disability of imprisonment—do not apply." *Id.* at *5. But *Venegas v. County of Riverside,* 2022 WL 2199842 (C.D. Cal. 2022), ruled otherwise. "Though Defendants make many valid points and the Magistrate Judge is aware of the split amongst the federal district courts regarding the applicability of [the tolling provision] to pre-trial detainees," the *Venegas* Court ruled that it was bound to follow *Elliott* as controlling precedent notwithstanding contrary precedent such as *Shaw v. Sacramento County Sheriff's Dep't,* 810 Fed. Appx. 553 (9th Cir. 2020), *cert. denied,* 141 S. Ct. 2636 (2021), and *Austin v. Medicis,* 230 Cal. Rptr. 3d 528 (Cal. Ct. App. 2018).

---

[8] For example, Plaintiff argues that both *Jones* and *Luckett* based their holdings on Michigan's and California's "unique legislative history" that "is foreign to Vermont." Doc. 15 at 17. But he engages in no discussion of Vermont's legislative history, leaving to speculation any differences between them.

McNEIL LEDDY & SHEAHAN

271 South Union St.
Burlington, VT 05401
T  802 863 4531
F  802 863 1743

www.mcneilvt.com

Unlike the *Venegas* Court, this Court is not bound to follow Ninth Circuit precedent. Respectfully, the Defendants urge this Court to apply the precedent cited above and determine the plain meaning of Section 551(a) by strictly construing the words "imprisoned" and "disability" together to exclude arrestees and pretrial detainees from the benefit of tolling.

WHEREFORE, for any and all of the reasons stated above and previously, the Defendants respectfully request that this Court grant their Motion in full, thereby dismissing all of Plaintiff's claims against them in their entirety with prejudice as time-barred.

DATED at Burlington, Vermont this 19th day of May 2023.

TOWN OF BENNINGTON, PAUL DOUCETTE, LAWRENCE COLE, and ANTHONY SILVESTRO

By:   /s/ Michael J. Leddy
Michael J. Leddy, Esq.
McNeil, Leddy & Sheahan, P.C.
271 South Union Street
Burlington, Vermont 05401
(802) 863-4531
mleddy@mcneilvt.com

By:   /s/ Kevin J. Coyle
Kevin J. Coyle, Esq.
McNeil, Leddy & Sheahan, P.C.
271 South Union Street
Burlington, Vermont 05401
(802) 863-4531
kcoyle@mcneilvt.com

*Attorneys for the Defendants*

c:   Lia Ernst, Esq.
Hillary Rich, Esq.

McNEIL LEDDY & SHEAHAN

271 South Union St.
Burlington, VT 05401
T 802 863 4531
F 802 863 1743
www.mcneilvt.com

10