UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

John Chinnici,

        Plaintiff,

        v.

Town of Bennington et al.,

        Defendants.

Civil Action No. 2:23–cv–52

**<u>OPINION AND ORDER</u>**
(Doc. 2)

Plaintiff John Chinnici brings this action under 42 U.S.C. § 1983, the Vermont Constitution, and Vermont common law against Defendants Town of Bennington, Bennington Police Chief Paul Doucette, and Bennington Police Department (BPD) Detectives Lawrence Cole and Anthony Silvestro (Defendants).  This lawsuit arises from the investigation and prosecution of Plaintiff for the armed robbery of two employees of a Bennington convenience store on January 11, 2016.  Plaintiff alleges that law enforcement lacked probable cause to arrest him for the offense on January 14, 2016; that the custodial interrogation by law enforcement following his unlawful arrest constituted an unreasonable seizure; and that subsequent warrants to search Plaintiff's cell phone and to obtain cell site location information for his phone violated Plaintiff's right to be free from unreasonable searches because they were based on law enforcement affidavits containing knowingly false and misleading information.

Plaintiff alleges the following causes of action: (1) with respect to the allegedly unlawful arrest, he brings a claim under 42 U.S.C. § 1983 for violation of his Fourth Amendment right to be free from unreasonable seizure; a related claim under Article 11 of the Vermont Constitution;

and a state tort claim for false arrest; (2) with respect to the allegedly unlawful interrogation and unlawful cell phone searches, he similarly brings a § 1983 claim for violation of the Fourth Amendment right to be free from unreasonable seizure and an analogous claim under Article 11 of the Vermont Constitution.  (Doc. 5.)

Presently before the Court is Defendants' Joint Motion to Dismiss on Statute-of-Limitations Grounds.  (Doc. 2.)  For the reasons explained below, Defendants' Motion to Dismiss is DENIED.

## Background[1]

### I.    Factual and Procedural Background

In January 2016, BPD was investigating the January 11, 2016 armed robbery of two convenience store employees.  (Doc. 5 at 1, ¶ 2; *id.* at 3, ¶ 18.)  On January 14, 2016, Bennington Police Officers arrested Plaintiff at the Bennington state office complex for the January 11 assault and armed robbery.  (*Id.* at 14–15, ¶¶ 105, 106.)  After his arrest, Plaintiff was transported from the state office complex to BPD for further investigation.  (*Id.* at 15, ¶¶ 107–08.)  Chief Doucette and Detective Cole obtained a sworn statement from Plaintiff at the station later that day.  (*Id.* at 17, ¶ 119.)  On January 15, 2016, Detective Cole filed an affidavit in support of an application for a warrant to conduct a forensic search of Plaintiff's phone.  (*Id.* at 19, ¶ 134.)  Plaintiff alleges that Detective Cole's affidavit "included multiple material misrepresentations and excluded multiple material facts that undermined Cole's claimed belief that Mr. Chinnici was involved in the January 11 robbery."  (*Id.* ¶ 136.)  Also, on January 15, Plaintiff was

---

[1]  On a motion to dismiss a Complaint under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all factual allegations in the Complaint as true and draw all reasonable inferences in plaintiff's favor. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  In order to withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Accordingly, accepting the factual allegations in the Complaint as true, the Court summarizes the facts material to the discrete statute-of-limitations issue presented in Defendants' Motion to Dismiss.

arraigned in state court on charges of assault and robbery with a weapon and providing false information to a law enforcement officer.  (*Id.* at 23, ¶ 165.)  On February 23, 2016, Detective Silvestro filed an affidavit in support of an application for a search warrant for cell site location information for Plaintiff's cell phone during the relevant time period.  (*Id.* ¶ 161.)  Plaintiff alleges that Detective Silvestro incorporated Detective Cole's January 15, 2016 affidavit "with all its material misrepresentations and omissions."  (*Id*. ¶ 162.)  Evidence from the January 15 and February 23 search warrants was introduced at Plaintiff's trial in 2018.  (*Id*. at 22, ¶ 159; *id.* at 23, ¶ 164.)

On July 10, 2017, federal prosecutors charged Plaintiff with obstructing commerce by robbery, in violation of 18 U.S.C. § 1951, based on the January 11, 2016 convenience store robbery.  *United States v. John Chinnici*, No. 2:17-cr-77 (D. Vt. 2020), ECF No. 1.  The State dismissed its charges against Plaintiff on July 12, 2017.  (Doc. 5 at 24, ¶¶ 168–69.)  After a five-day jury trial, Plaintiff was convicted of the federal charge on July 27, 2018.  (*Id.* ¶ 170.)  On December 19, 2019, Judge Reiss granted Plaintiff's motion for a new trial on the ground that Plaintiff's prior waiver of trial counsel's conflict of interest was not knowing and intelligent, and vacated Plaintiff's conviction.[2]  (*Id.* ¶ 172; *id.* at 25 ¶ 176.)  On January 17, 2020, Plaintiff pleaded guilty in this Court to using a cell phone in relation to distribution of a controlled substance.  (*Id.* at 25, ¶¶ 177–78.)  Plaintiff was sentenced to time served and one year of supervised release.  (*Id*. ¶ 178.)  The government dismissed the § 1951 charge related to the January 11 convenience store robbery.  (*Id.* ¶ 179.)  Plaintiff was released from federal custody on January 17, 2020 "after spending more than four years in prison."  (*Id.* ¶ 180.)

---

[2]  The Court held that Plaintiff's trial counsel had an actual conflict of interest because of counsel's prior representation of one of the government's witnesses at Plaintiff's trial.  The Court further found that Plaintiff's pretrial waiver of the conflict of interest was not knowing and intelligent because he did not fully comprehend the ramifications of the waiver on his trial rights.  *See United States v. Chinnici*, 431 F. Supp. 3d 470 (D. Vt. 2019).

Plaintiff initially filed the Complaint in this case in Vermont Superior Court on January 17, 2023.  (Doc. 5.)  On March 16, 2023, Defendants removed the case to this Court and filed the pending Motion to Dismiss.  The parties submitted memoranda addressing the statute of limitations issue and the Court held a hearing on Defendants' Motion to Dismiss.

## Discussion

### I.      Legal Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014).  "Because the statute of limitations is an affirmative defense, the defendant bears the burden of establishing by prima facie proof that the limitations period has expired since the plaintiff's claims accrued."  *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995).  "The burden then shifts to the plaintiff to establish that the limitations period should be tolled."  *Id.*

Section 1983 "do[es] not provide for a specific statute of limitations, establish rules regarding the tolling of the limitations period, or prescribe the effect of tolling."  *Chardon v. Fumero Soto*, 462 U.S. 650, 655 (1983).  These gaps "should be filled by state law, as long as that law is not inconsistent with federal law."  *Hardin v. Straub*, 490 U.S. 536, 538 (1989).  "Because no federal statute of limitations governs, federal courts routinely measure the timeliness of federal civil rights suits by state law."  *Id.*  Accordingly, the applicable statute of

limitations for claims under § 1983 is a state's "general or residual statute for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (internal quotation marks and alterations omitted). "Section 1983 actions that are filed in Vermont are subject to Vermont's three-year statute of limitations for personal injury actions." *Demarest v. Town of Underhill*, Case No. 2:21–cv–167, 2022 WL 911146, at *6 (D. Vt. Mar. 29, 2022) (citing 12 V.S.A. § 512(4)); *Billewicz v. Town of Fair Haven, Vermont*, Case No. 5:22–cv–73, 2022 WL 4115966, at *6 (D. Vt. Aug. 11, 2022) ("In § 1983 actions, this court applies Vermont's three-year limitations period for personal injuries.").[3]

## II.   Defendants' Motion to Dismiss

Defendants contend that all of Plaintiff's claims are barred by the three-year statute of limitations. Plaintiff does not dispute that "absent some kind of tolling, his complaint would be outside the statute of limitations and thus untimely." (Doc. 15 at 4.) Plaintiff also does not disagree, for purposes of this Motion, with Defendants' identification of the accrual dates of his claims, nor does he contend that the allegations in the Complaint warrant equitable tolling of the filing deadline. (*Id.*) Therefore, the issue to be resolved in this Motion to Dismiss is a narrow one: whether 12 V.S.A. § 551(a), which permits the tolling of the statute of limitations in certain specified circumstances, tolls the statute of limitations for Plaintiff's claims that accrued from the time of his arrest until his release from custody.

According to Plaintiff, the statute of limitations for each of his claims was tolled from his arrest on January 14, 2016 until his release from custody on January 17, 2020, rendering timely the Complaint filed three years later on January 17, 2023. Defendants disagree with the application of the tolling statute to Plaintiff's claims, principally contending that § 551(a) tolls

---

[3] Under Vermont law, tort claims based on false arrest are also subject to a three-year statute of limitations. 12 V.S.A. § 512(4); *Ekberg v. City of Burlington*, No. 1:08-CV-219, 2009 WL 281140, at *2 (D. Vt. Feb. 5, 2009).

the limitations period only for claims that accrue while a person is "imprisoned," a term that Defendants argue does not include pre-conviction confinement.  According to Defendants, as Plaintiff's claims accrued before he was "imprisoned" upon conviction in 2018, tolling under § 551(a) is unavailable to him.

> **A.      The text of 12 V.S.A. § 551(a) does not expressly prohibit tolling of the filing deadline for claims accruing at the time a person is placed in pre-conviction custody.**

The parties' competing interpretations of the term "imprisoned" has a dispositive implication for the resolution of the tolling issue.  If, as Plaintiff contends, he was "imprisoned" continuously[4] from the time of his arrest in 2016 through his release in 2020, then § 551(a) tolled all of his claims until the date of his release.  Under Plaintiff's interpretation, his Complaint filed three years after release is timely.  If, as Defendants contend, Plaintiff was not "imprisoned" until his conviction in 2018, he was not "imprisoned" in 2016 when his claims accrued and therefore § 551(a) does not toll the statute of limitations for his claims.  Under Defendants' interpretation, the statute of limitations on all of Plaintiff's claims expired in 2019[5] and therefore his Complaint is untimely.

The Court's analysis begins with the statutory language.  The tolling statute provides:

> When a person entitled to bring an action specified in this chapter is a minor, lacks capacity to protect his or her interests due to a mental condition or psychiatric disability, or is imprisoned at the time the cause of action accrues, such person may bring such action within the times in this chapter respectively limited, after the disability is removed.

---

[4]  This Court has previously held that tolling under § 551(a) ends when the plaintiff is released from custody, even if he is subsequently returned to custody.  *See Gilbeau v. Pallito*, Civil Action No. 1:11-CV-232, 2012 WL 2416719, at *7 (D. Vt. May 22, 2012).  In the event that it is subsequently shown Plaintiff was not in continuous custody in this case, Defendants reserve the right to renew their challenge to Plaintiff's reliance on § 551(a).  (Doc. 19 at 3 n.2.)

[5]  Defendants alternatively assert that the limitations period for Count III expired in 2021 at the latest. (Doc. 2-1 at 17.)

12 V.S.A. § 551(a).  "In construing a statute, the court's 'primary objective . . . is to effectuate the Legislature's intent.'"  *T.C. v. L.D.*, 2020 VT 19, ¶ 4, 211 Vt. 582, 229 A.3d 77 (omission in original) (quoting *Shires Hous., Inc. v. Brown*, 2017 VT 60, ¶ 9, 205 Vt. 186, 172 A.3d 1215).  "The first step in doing so is to examine the plain language of the statute."  *Id.*  Accordingly, "statutory interpretation must 'begin with the plain language, giving all undefined terms their ordinary meaning' while 'attempt[ing] to ascertain how a reasonable reader would understand the statutory text, considered as a whole.'"  *Deutsche Bank Nat'l Trust Co. v. Quicken Loans Inc.*, 810 F.3d 861, 868 (2d Cir. 2015) (alteration in original) (quoting *Fed. Hous. Fin. Agency v. UBS Ams. Inc.*, 712 F.3d 136, 141 (2d Cir 2013)).  If the plain language of the statute is unambiguous, courts should enforce the statute according to its terms.  *Wool v. Office of Pro. Regul.*, 2020 VT 44, ¶ 22, 212 Vt. 305, 236 A.3d 1250.  Only where "the language creates ambiguity or uncertainty" do courts "resort to statutory construction to ascertain the legislative intent."  *Shires Hous., Inc*., 2017 VT 60, ¶ 9.  Courts generally "presume that the Legislature intended the plain, ordinary meaning of statutory words, which, if undefined in the statute, [the court] may discern by consulting dictionary definitions."  *State v. Turner*, 2021 VT 30, ¶ 10, 214 Vt. 464, 254 A.3d 204 (internal quotation marks omitted).

Examining the plain language of the statute, the term "imprison" reasonably encompasses restraint or confinement against one's will.  The reasonable reader would understand the term in context to include the state-sanctioned confinement of an individual, such as by judicial order during the pendency of a case or by imposition of a sentence upon conviction of a crime.  Either understanding of the term—one pre-conviction, the other post-conviction—is reasonable.  As the word "imprisoned" is not defined in the statute, the Court considers dictionary definitions to further discern the plain, ordinary meaning of the term.  According to Black's Law Dictionary, to

"imprison" is "[t]o put into prison; to jail; incarcerate," or "[t]o keep (a person) somewhere so that the person is not at liberty, while preventing any departure." *Black's Law Dictionary* (11th ed. 2019). Similarly, "imprisonment" is defined as "[t]he act of confining a person, esp. in a prison," "[t]he quality, state, or condition of being confined," or "[t]he period during which a person is not at liberty." *Id.* These definitions of "imprisonment" make no reference to *who* causes the imprisonment, i.e., a law enforcement agency, a department of corrections, or a private individual.[6] The definition also does not specify that the meaning of "imprisonment" is dependent upon the *legal status* of the confined person, i.e., a pretrial detainee or a convicted person awaiting sentence or serving a sentence. Rather, the definitions focus on the act of confining a person such that he or she is not at liberty. Whether in pretrial detention or serving a sentence, a person in either circumstance is in a state of confinement and not at liberty. Plaintiff was confined and not at liberty when he was arrested on January 14, 2016. He alleges that he remained confined and not at liberty until release on January 20, 2020. Therefore, by its express terms the statute does not preclude application of the term "imprisonment" to an individual held in custody after arrest but before conviction.

The Court agrees with Plaintiff that this interpretation of the term "imprisonment" also finds support in the common-law understanding of the term at the time of the statute's enactment.[7] (Doc. 15 at 7–8.) In interpreting a statute, courts generally accept that the

---

[6] Defendants appear to suggest that the identity of the agency that held Plaintiff in custody pre-conviction has a material bearing on the interpretation of the term "imprisonment." (Doc. 19 at 2.) Specifically, in responding to Plaintiff's statement that he was held in "law enforcement custody" from the time of arrest on January 14, 2016, until his release on January 17, 2020, Defendants clarify that Plaintiff was in Department of Corrections (DOC) custody for most of the time after his January 15, 2016 arraignment, and that DOC is not technically law enforcement. *Id.* As this Opinion and Order concludes that the *fact* of custody is the relevant consideration, the identity of the custodial agency is immaterial.

[7] The legislature has subsequently amended 12 V.S.A. § 551(a), but the parties do not contend that the amendments are material to the issue presented in this case.

legislature intended to incorporate the common-law understanding of statutory terms.  *United States v. Soler*, 759 F.3d 226, 233 (2d Cir. 2014) ("It is a settled principle of interpretation that, absent other indication, [the legislature] intends to incorporate the well-settled meaning of the common-law terms it uses.") (quoting *Sekhar v. United States*, 570 U.S. 729, 732 (2013)).  As relevant to the issue in this case, at common law an actor is liable for the tort of "false imprisonment" if he or she "acts intending to confine the other . . . within boundaries fixed by the actor."  Restatement (Second) of Torts § 35 (American Law Institute 1965).  Confinement may be accomplished by "actual or apparent physical barriers" or by "overpowering physical force, or by submission to physical force."  *Id*. §§ 38, 39.  Upon arrest, a person is initially confined by submission to physical force.  After arrest, a person in pretrial custody is confined by actual physical barriers.  Therefore, a construction of the term "imprisonment" in § 551(a) to include a person after his arrest and remand to continuous pre-conviction custody is consistent with the common-law understanding of the term.

Defendants disagree that the Restatement (Second) of Torts provides the relevant common-law history informing the interpretation of the term "imprisonment."  (Doc. 19 at 5 n.4.)  Rather, Defendants assert that rules regarding the maintenance of actions by prisoners derive from the common-law doctrine of *civiliter mortuus*, or "civilly dead."  *Id*.  According to this doctrine, convicted felons were deemed civilly dead, and therefore the law permitted the tolling of the limitations periods for their claims until release from prison.  As a result, Defendants reason that mere arrestees or pretrial detainees were ineligible for the tolling allowance afforded the "imprisoned."  According to Defendants, it should be presumed that "civil death" doctrine informed the Vermont legislature when it enacted 12 V.S.A. § 551(a), "even if Vermont courts, years later, would reject civil death as part of the state's common law."

*Id.* Defendants also acknowledge, however, that "in Vermont, the concept of 'civil death,' by which convicted criminals forfeited their civil rights while in prison, *never took hold under common law*." (Doc. 2-1 at 19 (emphasis added) (quoting *Town of Baltimore v. Town of Chester*, 53 Vt. 315, 319 (1881) ("[A] prisoner's legal rights, subject to his personal restraint, are unaffected by the imprisonment, except as specially provided by statute.")).)[8]  Absent some demonstration that Vermont's tolling statute was intended to ameliorate the consequences of "civil death" doctrine (as in other jurisdictions, discussed *infra*), and given Defendants' acknowledgement that Vermont courts have repudiated "civil death," the Court cannot conclude that § 551(a)'s use of the term "imprisoned" refers only to those in custody based upon a felony conviction.

Defendants further maintain that Plaintiff's plain-meaning interpretation is flawed because it does not reconcile the statute's use of the terms "imprisonment" and "disability." (Doc. 19 at 3.)  In other words, in Defendants' view, the statute requires that the "imprisonment" be shown to be an actual impediment to the prisoner's ability to bring a claim.  The language of § 551(a) pertinent to Defendants' argument provides: when a person "is imprisoned at the time the cause of action accrues, such person may bring such action within the [statute of limitations], after the disability is removed."  As the statute does not define the term "disability," Defendants cite dictionary definitions that generally equate the term with "the inability to perform some function" or "[a]n objectively measurable condition of impairment, physical or mental." (Doc. 19 at 4.)  Defendants note that Plaintiff "alleges no objectively measurable condition of impairment . . . that might have prevented him from pursuing his claims at any time before his conviction in late July 2018." (*Id.* at 5.)  Defendants further note that Plaintiff's "litigiousness

---

[8]  Plaintiff agrees that the concept of "civil death" for prisoners has never been a feature of Vermont law. (Doc. 15 at 18.)

while in [Vermont DOC] custody shows that he experienced no practical inability to pursue his claims against the Defendants while he was a pretrial detainee," and therefore he was not under a "disability" within the meaning of § 551(a). (*Id*. at 4–5.)

Defendants are correct that when engaging in statutory interpretation, a court is required to consider the statute as a whole, interpreting specific terms in the context of the entire statute. *Deutsche Bank Nat'l Trust Co.*, 810 F.3d at 868. The statute enumerates three classes of individuals that may avail themselves of the tolling provisions if their cause of action accrues while they are in any of those classes. The classes are: (1) a minor; (2) a person lacking capacity "to protect his or her interests due to a mental condition or psychiatric disability;" and (3) an "imprisoned" person. 12 V.S.A. § 551(a). The statute permits the person to file a claim within the prescribed limitations period "after the disability is removed," a clause that refers to the three previously enumerated classes of individuals whose "disability" relieves them from compliance with the statute of limitations.

As relevant here, a plaintiff "imprisoned" at the time his cause of action accrues must file his claim within three years "after the disability is removed," i.e., within three years of his release from imprisonment. Focusing on the dictionary definition of "disability" as "the inability to perform some function," Defendants argue that Plaintiff was not under a "disability" during his confinement prior to conviction because as a practical matter he was able to file civil lawsuits. (Doc. 19 at 4–5.) The statute contemplates that the *fact* of imprisonment is the disability justifying tolling of the statute of limitations. As discussed in Part II.B. below, whether as a practical matter a plaintiff is able to file lawsuits from jail is immaterial to the application of the tolling statute. As the meaning of the term "disability" is apparent on the face of the statute, it is unnecessary to resort to the dictionary for independent definitions of the term.

11

**B.** **Assuming § 551(a) is ambiguous as to whether tolling applies to claims accruing during pre-conviction custody, application of its tolling provisions to such claims is consistent with the apparent intent of the legislature.**

As the Supreme Court has observed, "[i]n virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application." *Hardin v. Straub*, 490 U.S. 536, 539 (1989) (quoting *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 464 (1975)). "Courts thus should not unravel state limitations rules unless their full application would defeat the goals of the federal statute at issue." *Id*. In reversing the Sixth Circuit's refusal to apply Michigan's tolling statute to an incarcerated plaintiff's § 1983 claim, *Hardin* explained the legislative reasoning animating such tolling statutes:

> [M]any prisoners are willing and able to file § 1983 suits while in custody. Thus, a State reasonably could decide that there is no need to enact a tolling statute applicable to such suits. Alternatively, a State reasonably might conclude that some inmates may be loathe to bring suit against adversaries to whose daily supervision and control they remain subject, or that inmates who do file may not have a fair opportunity to establish the validity of their allegations while they are confined. The Michigan tolling statute reflects a legislative decision to lessen any such difficulties by extending the time in which prisoners may seek recovery for constitutional injuries. Such a statute is consistent with § 1983's remedial purpose.

*Id*. at 544. Although neither the legislature nor the Vermont courts appear to have squarely addressed whether § 551(a) was intended to apply equally to claims accruing during pre-conviction or post-conviction custody,[9] the decisions of Vermont courts applying § 551(a) are premised less on the formal nature of an individual's custody than on the fact of custody itself and the effect of custody on the individual's "fair opportunity to establish the validity of their allegations while they are confined." *Id*.

---

[9] At oral argument on the Motion to Dismiss, the parties agreed that there does not appear to be Vermont precedent addressing the issue of tolling of the limitations period for claims accruing during pre-conviction custody. (Doc. 25 at 4:2–15; *id.* at 35:7–13.)

For example, the Vermont Supreme Court declined to apply § 551(a) to toll the limitations period for an otherwise untimely claim filed by a plaintiff injured while on furlough status.  *See Quinn v. Gorczyk*, No. 2003-038, 2003 WL 25745715 (Vt. 2003).  In determining that tolling was unavailable because plaintiff was not "imprisoned" within the meaning of § 551(a), the Court's reasoning focused on plaintiff's unimpaired access to the courts because he was not in a custodial setting at the time of his injury.  *Id*. at *2 ("At the time his cause of action accrued, [plaintiff] was not incarcerated in a correctional institution; he was living in the community, and therefore his ability to utilize the court system was not impaired.").

As Defendants note, Plaintiff has filed multiple lawsuits while in custody, which may suggest that custody has not impaired his access to the courts.  (Doc. 19 at 4–5.)  Nevertheless, as this Court has noted, "[an individual's] ability to engage in litigation while imprisoned may call into question the wisdom of § 551(a)'s tolling provision as it applies to prisoners . . . . [n]onetheless, the Supreme Court has held that this type of statute should be adhered to in § 1983 actions."  *Bain v. Cotton*, No. 2:06 CV 217, 2009 WL 1660051, at *5 (D. Vt. June 12, 2009) (adopting report and recommendation).  Further, the fact that Plaintiff's previous pro se lawsuits appear to have been dismissed, often without any filed objections, at least raises the question whether a plaintiff has a fair opportunity while in custody to present his claims.

Therefore, application of § 551(a) to claims accruing during pre-conviction custody is consistent with the purpose of tolling statutes—to afford detained individuals a fair opportunity to establish their claims, *Hardin*, 490 U.S. at 544, and recognizes that custody impairs a person's ability to utilize the court system, *Quinn*, 2003 WL 257445715, at *2.

13

C.     **Application of 12 V.S.A. § 551(a) to toll the limitations period for claims accruing during pre-conviction custody is consistent with this Court's prior decisions.**

Although this Court does not appear to have squarely addressed the issue, its previous decisions do not appear to have distinguished between pre-conviction or post-conviction custody in the application of § 551(a).  For example, the Court has applied § 551(a) to toll the limitations period between arrest and release on bail eleven months later for claims accruing at the time of plaintiff's arrest.  *Beaupre v. O'Connor*, No. 2:14-CV-256, 2015 WL 5530180, at *2–3 (D. Vt. Sept. 18, 2015).  In *Beaupre*, plaintiff alleged that police arrested him and seized his vehicle without probable cause in violation of the Fourth Amendment.  He also alleged a Fourteenth Amendment due process claim that police subsequently sold his vehicle without notice to him.  *Id*.  Citing 12 V.S.A. § 551(a), the Court noted that "the accrual of Beaupre's claim [was] subject to tolling for the duration of [his] period of imprisonment incident to the arrest," which extended through his release on bail months later.  *Id*. at *3.  There is no indication in the decision that plaintiff was convicted at any point between arrest and release on bail.

In another case, the Court applied § 551(a) to toll claims that accrued during pre-conviction detention.  *Bain*, 2009 WL 1660051, at *4–5.  Bain was arrested on May 22, 2003 and alleged that he received constitutionally inadequate medical care on July 6, 2003 while in custody but not yet convicted.[10]  *Id*. at *4.  He filed his Complaint over three years later on November 1, 2006.  *Id*.  The Court tolled the limitations period for Bain's claims notwithstanding their accrual before his conviction at trial.  Defendants distinguish *Bain*, asserting that the Court did not engage in statutory interpretation in that case, but simply rejected

---

[10]   This conclusion is based on the fact that Bain was engaged in suppression litigation at hearings held on June 2, 2004 and October 29, 2004.  *State v. Bain*, 2009 VT 34, ¶ 6, 185 Vt. 541, 975 A.2d 628.

the defendant's policy argument that the tolling statute for imprisoned inmates is "no longer valid" given that Bain had submitted "multiple filings in state and federal courts." *Bain*, 2009 WL 1660051, at *4; (Doc. 19 at 7 n.6).  Defendants are correct that the Court disagreed with the general claim that the policy underlying the statute was no longer valid, but even without expressly interpreting the term "imprisoned," the fact remains that the Court denied the motion to dismiss Bain's claim as untimely, applying § 551(a) to toll claims that accrued pre-conviction. *Bain*, 2009 WL 1660051 at *5.

In *Aguiar v. Carter*, plaintiff filed a federal civil action against "various parties who were involved in the investigation and prosecution of his criminal case."  File No. 2:17-cv-121, 2018 WL 3966262, at *1 (D. Vt. Aug. 17, 2018).  Plaintiff's allegations pertained to "actions taken during the investigation that occurred prior to his 2011 conviction."  *Id*. at *2.  The government did not contest that plaintiff was "incarcerated prior to, and at the time of, his conviction," *id*. at *3, but "nonetheless argue[d] that tolling should not apply because [§ 551(a)] is inconsistent with federal policy."  *Id*.  This Court disagreed, determining to "adhere to the State of Vermont's tolling provision for constitutional claims brought by incarcerated litigants."  *Id*.

In *Finley v. Hersh*, No. 1:12-CV-162-JGM, 2013 WL 3450270, at *2 (D. Vt. July 9, 2013), Plaintiff alleged § 1983 claims against federal and state law enforcement officers who he claimed "failed to provide [him] with a fair trial by fabricating evidence and withholding exculpatory evidence."  Such trial-related claims necessarily arose pre-conviction.[11]  This Court

---

[11]  Although it is not clear whether plaintiff was in custody at the time his claims accrued at trial, the Opinion and Order notes that Finley was indicted in 1998 and convicted at trial in February 1999, *Finley*, 2013 WL 3450270, at *1, and that plaintiff asserted "tolling commenced upon his incarceration in 1999," *id*., at *6.  This suggests that plaintiff's claims accrued pre-conviction, but that he was not in custody at the time of the trial.  In any event, the Court dismissed the claims as untimely given that they were filed years after the tolled deadline.  *Id*. at *4.

recognized that tolling under § 551(a) applied to plaintiff's claim up until his release from prison, after which he had three years to file his § 1983 claims.  *Id*. at *4.

### D.    Defendants' cited authority does not preclude application of § 551(a) to toll the limitations period for claims accruing during pre-conviction custody.

Defendants cite two decisions holding that pre-conviction detainees may not be considered "imprisoned" for purposes of the tolling statute at issue in the cases.  In *Jones v. Hamtramck*, the Sixth Circuit considered whether Michigan's tolling statute, "which applies to one who is 'imprisoned' at the time his cause of action accrues, applies to a person who is merely under arrest at that point."  905 F.2d 908, 908 (6th Cir. 1990).  Plaintiff alleged in his § 1983 lawsuit a series of constitutional claims pertaining to police conduct at the time of, and shortly after, his arrest, including that he was taken into custody and held on a murder charge without probable cause.  *Id*.  Reasoning that "[a] pretrial detainee is not a person who has been 'imprisoned' within the literal meaning of that term," *Jones* concluded that the tolling statute did not apply to the plaintiff because his claims accrued before he was imprisoned.  *Id*. at 609.

A subsequent decision of the Michigan Court of Appeals, however, questioned *Jones's* interpretation of the Michigan tolling statute to categorically exclude pretrial detainees from the definition of "imprisoned."  *Evans v. Hebert*, 513 N.W. 2d 164 (Mich. App. 1994).  *Evans* cited decisions of the Seventh Circuit, the Fifth Circuit, and the Northern District of Illinois, which held that tolling of the statute of limitations applies to a plaintiff's period of pretrial detention. *See id*. at 168.  According to *Evans*, "[t]he reasoning behind the exception is that uninterrupted incarceration prior to conviction is surely as much of a disability as post-conviction incarceration."  *Id*. (internal quotation marks omitted).  *Evans* expressly endorsed the approach of those courts holding that "the term 'imprisoned' extends to a plaintiff prisoner's period of pretrial detention."  *Id*.  The court explained the logic of this approach:

> [T]hose held in the state's custody are more restricted than ordinary citizens, and the restraints imposed by their confinement places them at a disadvantage compared to ordinary citizens.  It could even be argued that pretrial detainees are *more* restricted in their access to the legal system than those imprisoned after conviction, precisely because those in prison are better able to exercise the increased right to counsel, the right to have transcripts to trial records, and . . . access to law libraries.

*Id*. at 168–69 (internal quotation marks omitted).  Notwithstanding *Evans's* endorsement of an interpretation of "imprisonment" to include individuals in continuous pre-conviction detention, the court was constrained by the legislative history of the Michigan statute to preclude its application to individuals whose claims accrued while in pre-conviction custody.  Specifically, *Evans* found that earlier iterations of the tolling statute defined "imprisonment" in relation to "conviction of a criminal offense" and detention "in the state prison," indicating that tolling was only available for claims accruing after a plaintiff was convicted and sentenced.  *Id*. at 169.  Although the tolling statute at the time of *Evans* no longer included such qualifying language— providing only that tolling is applicable to an individual "imprisoned at the time his claim accrues"—the court found no evidence that the legislature intended to "change or enlarge the meaning of 'imprisonment.'"  *Id*.  *Evans* ultimately concluded that pretrial detention is not "imprisonment" within the meaning of Michigan's tolling statute.

Although *Jones* held that the term "imprisonment" in Michigan's tolling statute does not apply to individuals whose claims accrue during pre-conviction detention, the decision is not binding on this Court's interpretation of the Vermont tolling statute.  First, the ultimate holding in *Evans* is premised on Michigan legislative history that appears to be absent in this case.[12]  The parties do not suggest that the history of Vermont's tolling statute demonstrates similar

---

[12]  With respect to Plaintiff's argument that the Vermont tolling statute does not share the unique legislative history of the Michigan statute at issue in *Jones*, Defendants fault Plaintiff for not explaining why the legislative history of the Vermont tolling statute supports Plaintiff's argument.  (Doc. 19 at 9 n.8.)  Neither party has examined in detail the legislative history of the Vermont tolling statute, and the Court does not understand either party to be claiming that Vermont legislative history is dispositive of the issue in this case.

legislative intent to restrict application of the term "imprisonment" to individuals whose claims accrued only after they sustained a conviction.  Second, the Michigan Court of Appeals has called into question the reasoning of *Jones* to the extent it held that a pretrial detainee is not "imprisoned" within the literal meaning of the term, and expressed the opinion that pretrial detainees whose claims accrue while in pre-conviction custody should be within the ambit of the tolling statute.[13]  Therefore, upon close inspection, *Evans* does not support Defendants' proposed construction of Vermont's tolling statute.

Defendants' reliance on *Luckett v. Sudbury*, Case No. 20-cv-0932-MMA-JLB, 2020 WL 3402251 (S.D. Cal. June 18, 2020) is similarly unpersuasive.  In that case, plaintiff brought a § 1983 action alleging that he sustained injuries during his criminal trial when Sheriff's Department officers allegedly punched and kicked him in the courtroom; tasered him after he was removed from the courtroom, and subsequently denied him medical care.  *Luckett*, 2020 WL 3402251, at *2.  California law tolled the statute of limitations for claims accruing at the time the plaintiff was a "prisoner" serving less than a life sentence.  *Id.* at *3.  Noting that a California appellate court had determined that "a pretrial detainee is not 'imprisoned on a criminal charge' and is therefore not entitled to tolling for the period he was in custody prior to being in prison," *Luckett* determined that plaintiff was not entitled to tolling under the statute because at the time of the alleged incidents he was in trial and therefore not a "prisoner" when his claims accrued. *Id.* (citing *Austin v. Medicis*, 21 Cal. App. 5th 577, 597 (2018)).

---

[13]  Not only did *Evans* question the conclusion in *Jones* that pretrial detainees may not be considered "imprisoned" under the tolling statute, as explained above, it also observed that *Jones* "adopted a stance directly contrary to [its] earlier interpretation of the term 'imprisoned'" in an analogous Ohio statute.  *See Evans*, 513 N.W.2d at 167.  Specifically, *Evans* quoted *Austin v. Brammer*, 555 F.2d 142, 143 (6th Cir. 1977), where the Sixth Circuit explained: "Defendants' claim that 'imprisonment' within the meaning of the statute means only confinement in a penitentiary following conviction finds no support that we are aware of in Ohio law . . . ."  But for the legislative history compelling the result in *Evans*, the Michigan Court of Appeals stated that it "would adopt the approach of the Sixth Circuit Court of Appeals in *Austin* . . . and those other courts that have held the term 'imprisoned' extends to a plaintiff prisoner's period of pretrial detention."  *Evans*, 513 N.W.2d at 168.

The Court does not find *Luckett* persuasive for several reasons.  First, the court issued its decision in the course of conducting the required "screening" of civil complaints filed by prisoners seeking redress from government officers.  *See* 28 U.S.C. § 1915A(a) ("The court shall review, before docketing, if feasible . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.").  The screening process is intended to ensure from the outset that courts will dismiss complaints determined on their face to be frivolous or meritless, or otherwise not legally viable.  *See id.* § 1915A(b)(1)–(2).  As Mr. Luckett represented himself, the court did not have the benefit of full legal argument by counsel on both sides of the issue.

Second, *Luckett*'s conclusion on the tolling issue relied on *Austin v. Medicis*, a California appellate court decision holding that an individual may not avail himself of California's tolling statute when his cause of action accrues during pretrial custody.  As *Austin*'s exhaustive examination of the history of the California tolling statute demonstrates, however, the decision offers little aid in the interpretation of Vermont's tolling statute.  In relevant part, the California statute provided: "If a person entitled to bring an action . . . is, *at the time the cause of action accrued*, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action."  *Austin*, 21 Cal. App. 5th at 589–90 (omission in original).  Finding the term "imprisoned" to be ambiguous, the court traced the relevant legislative history of the statute, explaining that it must be understood as a measure to "ameliorate the harsh results" of California's 1872 "civil death statutes."  *Id*. at 592.

In summary, California historically deemed individuals sentenced to life imprisonment to be "civilly dead."  Such an individual was treated as if he were "dead in fact" and therefore he

had no ability to exercise his civil rights.  Such "civil death" was "reserved for felons sentenced to state prison."  *Id*. at 592–93.  An individual sentenced to less than life in prison, however, lost his civil rights only during the term of imprisonment.  The tolling statute was designed to lessen the impact of the loss of civil rights due to imprisonment by tolling the statute of limitations for prison inmates.  *Id*. at 593.  As *Austin* explained, "since statutory tolling existed to ameliorate statutorily imposed disabilities, it only applied to prisoners who *actually suffered* legal disabilities—felons sentenced to state prison."  *Id*. at 594.  The California legislature eventually abolished the concept of "civil death" for state prisoners, which, among other rights, allowed the imprisoned to file civil actions.  In light of this development, the legislature also enacted "a new, less generous" tolling statute.  *Id*. at 595.  Given that California's "civil death statutes and their related tolling provisions only applied to defendants convicted of felonies and sentenced to state prison"—and the legislature had given no indication that it intended to expand tolling to those in pretrial custody—*Austin* concluded that "a would-be plaintiff is 'imprisoned on a criminal charge' within the meaning of [the California tolling statute] if he or she is serving a term of imprisonment in the state prison."  *Id*. at 596, 597.[14]

There is simply no indication that Vermont's tolling statute shares a similar relation to civil death statutes.  Unlike California, Vermont's tolling statute does not appear to arise from a history of the state denying civil rights to "felons sentenced to state prison."  *Id.* at 594.  Consequently, *Austin* and its unique legislative history do not compel the conclusion that Vermont's tolling statute applies only to those individuals convicted and serving a term of imprisonment.

---

[14]  Notwithstanding its holding, *Austin* noted that "[c]ertainly . . . there are compelling policy reasons to support a different rule," but "it is up to the Legislature, and not the courts, to rewrite this statute."  21 Cal. App. 5th at 597 n.7.

Finally, *Luckett* relied on *Austin*'s construction of the California tolling provision without acknowledging binding precedent to the contrary.  In *Elliott v. City of Union City*, 25 F.3d 800 (9th Cir. 1994), plaintiff filed a § 1983 complaint against a police department and its officers to recover for injuries during his arrest.  The district court dismissed the complaint as time-barred. The Ninth Circuit reversed, holding that California law "tolls the limitations period when the plaintiff has been in continuous custody, commencing at the time of his arrest." *Id*. at 801.  In reaching this conclusion, *Elliott* explained:

> In terms of limitations on the prisoner, continuous custody is the relevant disability. For tolling purposes, there is little difference between being incarcerated pre-arraignment, pre-conviction or post-conviction: none of these forms of custody affords the prisoner a change in status with regard to his disability.

*Id*. at 803.[15]  Therefore, *Luckett* is of limited relevance to the interpretation of Vermont's statute because it relies on caselaw examining California's unique statutory scheme, and its holding is inconsistent with Ninth Circuit law.

---

[15]  District courts in the Ninth Circuit have split over whether *Austin* or *Elliott* provides the governing standard for application of California's tolling statute to claims accruing while an individual is in pretrial detention. *See, e.g.*, *Ruiz v. Ahern*, Case No. 20-cv-01089-DMR, 2020 WL 4001465, at *4 (N.D. Cal. July 15, 2020).  In 2020, the Ninth Circuit affirmed a district court decision holding that tolling was not available for claims accruing around the time of the plaintiff's arrest.  *Shaw v. Sacramento Cty Sheriff's Depart.*, No. 18-17184, 810 F. App'x. 553, 554 (9th Cir. June 23, 2020).  *Shaw* explained that it was "obligated to follow" *Austin* "in the absence of evidence that the California Supreme Court would rule to the contrary." *Id*.  As one district court has noted, however, *Shaw's* brief analysis of the issue did not reference its own precedential opinion in *Elliott*, which in that court's view was a reason not to rely on the analysis in *Shaw*. *See Ruiz*, 2020 WL 4001465, at *5.

In a recent unpublished memorandum order, however, the Ninth Circuit determined to adhere to its decision in *Elliott*, concluding that California's tolling statute extends to a pretrial detainee who has been held in continuous custody.  *Mosteiro v. Simmons*, No. 22-16780, 2023 WL 5695998, at *1 (9th Cir. Sept. 5, 2023).  In reaching this holding, the Ninth Circuit compared the reasoning of *Elliott* and *Austin*, ultimately determining that the California Supreme Court would not follow the reasoning in *Austin*. *Id*. at *2–3.  Although an unpublished decision, *Mosteiro's* analysis of the comparative approaches of *Elliott* and *Austin* is persuasive evidence that in its most recent consideration of the issue, the Ninth Circuit continues to adhere to the reasoning in *Elliott*.  Additionally, the *Mosteiro* view is consistent with that of other courts.  As *Elliott* observed, "other circuits have construed similar statutes and . . . the weight of authority supports tolling for pre-arraignment or pre-trial custody."  *Elliott*, 25 F.3d at 802 n.4.

**<u>Conclusion</u>**

For the reasons explained above, 12 V.S.A. § 551(a) tolled the statute of limitations for all of Plaintiff's claims until his release from custody on January 17, 2020.  As Plaintiff filed his Complaint on January 17, 2023, his claims are not time-barred.

Defendants' Motion to Dismiss (Doc. 2) is DENIED.

Dated at Burlington, in the District of Vermont, this 11th day of March 2024.

*/s/ Kevin J. Doyle*
Kevin J. Doyle
United States Magistrate Judge
